FREDERICKA HOMBERG WICKER, Judge.
[^Defendant, Hallmark Specialty Insurance Company (“Hallmark”) [1] appeals the trial court’s November 16, 2015 grant of summary judgment in favor- of plaintiffs, Peggy Brazan and Brookes Brazan Wag-uespack, and defendant, State Farm Mutual Automobile Insurance Company (“State Farm”), finding that a sugarcane trailer was covered by a commercial auto policy issued by Hallmark to its named insured, Arabie Trucking Services, L.L.C. (“Arabie Trucking”). For the reasons fully discussed herein, we affirm the trial court’s judgment declaring that Hallmark’s policy covered the sugarcane trailer in question.

PROCEDURAL AND FACTUAL HISTORY

Hallmark’s insured, Arabie Trucking, is in the transportation business, at least a portion of which includes transporting raw sugarcane from cane fields to sugar mills. Arabie Trucking'entered into a Trucking Service Agreement with Lafourche Sug *1276 ars, L.L.C. (“Lafourche”) to transport sugarcane from Lafourche’s cane farmer customers’ fields to Lafourche’s sugar mill. Arabie Trucking, in turn, ^entered into an agreement, entitled “Owner/Operator Independent Contract of Service Agreement,” with WHY, a trucking company owned by Charlotte Alexander, to provide a 1999 International tractor, owned by WHY, and a driver to transport the sugarcane from the field to Lafourche’s sugar mill.
Pursuant to the contract, Arabie Trucking assigned a 2007 MAGN sugarcane trailer, owned by Arabie Brothers Leasing, Inc., to WHY for use during the cane hauling season.. Despite sharing the same principal owner, Arabie Trucking and Ara-bie Brothers Leasing, Inc., are distinct business entities. Though the record reflects that Arabie Brothers Leasing, .Inc. owned the sugarcane trailer, there is no evidence of any agreement between Arabie Trucking and Arabie Brothers Leasing, Inc. regarding use of the trailer by Arabie Trucking or WHY. WHY, pursuant to its obligations under the contract, provided the 1999 International tractor and hired its driver, Jerold Washington, who was pulling the sugarcane trailer on December 14, 2012, at the time of the fatal accident at issue in this mátter.
On the date of the accident, Mr. Washington was driving the tractor south on LA 20, a two-lane highway in St. James Parish. The tractor was towing the 2007 MAGN sugarcane trailer filled with raw sugarcane. According to a Louisiana State Police Uniform Motor Vehicle Traffic Crash Report, prior to the accident, a vehicle stopped in the southbound lane of LA 20 to avoid hitting a hunting dog running in the road. The decedent, Gaspard Bra-zan, was standing on the side of the road attempting to retrieve the dog. Mr. Washington told the investigating officer that he crossed the centerline of the road to an attempt to avoid hitting the vehicle stopped to southbound lane of the the road. The tractor driven by Mr. Washington struck an oncoming vehicle in the northbound lane before veering off the road, - The tractor then struck Mr, Bra-zan’s truck on the side of the road, which |4⅛ turn struck Mr. Brazan. The tractor and attached trailer eventually fell over onto them side and into a ditch.
The police crash report reflects that Mr. Washington told the investigating officer that he tried to stop, but the brakes did not work. The report also indicates Mr. Washington’s commercial driver’s license was “disqualified” at the time of the accident due to a “DWI.” The Louisiana State Police also prepared a Commercial Vehicle Post-Crash Investigative Report, which states that its investigation of the trailer indicated that at least twenty percent of the brakes on the trailer were not working prior to the accident. The report also notes that Mr. Washington told the officer the trailer was to the shop within two weeks prior to the accident, but he did not know why it was to the shop. Maintenance records produced by Arabie Trucking indicate that Arabie Trucking’s employee, Ernest Boyd, changed two tires on the cane trailer on the morning of the accident.
On March 25, 2013, plaintiffs filed a Petition for Wrongful Death and Survival Action against Jerold Washington,-Charlotte Alexander, WHY and WHY’s insurer, Scottsdale Insurance Company. On September 23, 2013, plaintiffs-filed a Supplemental and Amended Petition adding State Farm Mutual Automobile Company (“State Farm”), as the underinsured/unin-sured motorist carrier for Peggy and Gas-pard Brazan.
Plaintiffs amended their petition for a second time on December 6, 2013, adding *1277 Hallmark as a defendant for insuring the trailer, which they alleged was owned by Arabie Trucking,[2] and as the excess carrier insurer for Mr. Washington. On June 19, 2014, plaintiffs filed a Third Supplemental and Amending Petition adding Ara-bie Trucking as a defendant. Plaintiffs alleged that a causé of the accident was the negligence of-Arabie Trucking, which included Arabie Trucking’s | ¡failure to “properly maintain the trailer connected to the tractor being driven by Washington, specifically the brakes, to ensure- they were in proper working. order,” Arabie Trucking’s negligently entrusting “its trailer to a driver with a suspended driver’s license,” and “‘other acts of negligence which will be more fully shown at trial.”
On September 8, 2015, State Farm filed, a motion for summary judgment seeking to establish that the trailer is a covered auto under a “nonowned autos” provision of Hallmark’s insurance policy.[3] State Farrn argued that Arabie Trucking admitted in its most recent discovery responses that it did not “own, lease, hire, rent or borrow” the trailer. State:'Farm further argued the trailer was “used in connection with” Arabie Trucking’s business on the date of the accident, because Arabie Trucking admitted it was in the business of-transporting sugarcane for Lafourche, and at the time of the accident, the tráiler was being used to transport sugarcane for Lafourche. On September 28, 2015, plaintiffs filed a summary judgment motion adopting State’s Farm’s argument that coverage existed under Hallmark’s policy because the 'trailer was a nonowned auto.
Hallmark filed a cross-motion for summary judgment and opposition to the summary judgment motions filed by plaintiffs and State Farm, in which it argued that the trailer did not qualify as a nonowned auto under its policy because it was not used in connection with Arabie Trucking’s business.' Arabie Trucking also filed- a Renewed Motion for Summary Judgment on October 5, 2015, seeking dismissal of the plaintiffs’ claims against it under the “independent! contractor doctrine,” which plaintiffs and State Farm opposed.-
On November 16, 2015, after oral argument, the trial court signed a written judgment granting, plaintiffs’ and State Farm’s motions for summary judgment | ¡finding coverage under Hallmark’s policy, denying Hallmark’s cross-motion for .summary judgment, and continuing Arabie Trucking’s renewed motion for summary judgment pending the deposition of Jerold Washington.[4] The trial court also found no just reason for delay and designated the ■■ judgment. .as final pursuant to La. G.C.P. art. 1915(B) because “any trial without final resolution of coverage would result in a waste of judicial resources and could result in multiple trials.”
Hallmark timely filed this appeal, assigning error to tlie trial court’s grant of partial summary judgment in favor of plaintiffs and State Farm finding that the nonowned auto provision of the Hallmark policy provided coverage for the trailer driven by Jerold Washington at the time of the accident.

*1278
LAW AND ANALYSIS

Appellate courts review the granting of a summary judgment de novo using the same criteria governing the trial court’s consideration of whether summary judgment is appropriate. Burns v. Sedgwick Claims Mgmt. Servs., 14-421 (La.App. 5 Cir. 11/25/14), 165 So.3d 147; Prince v. K-Mart Corp., 01-1151 (La.App. 5 Cir. 3/26/02), 815 So.2d 245, 248; Duncan v. U.S.A.A. Ins. Co., 06-363 (La.11/29/06), 950 So.2d 544, 547. A motion for summary judgment should be granted “if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2).[5]
The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of most actions. La. C.C.P. art. 966(A)(2); Trench v. Winn-Dixie Montgomery LLC, 14-152 (La.App. 5 Cir. 9/24/14), 150 So.3d 472. The party moving for summary judgment bears the burden of proof. La. C.C.P. art. 966(C)(2). A summary judgment may be rendered dis-positive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties. La. C.C.P. art. 966(E).
In support of their motions for partial summary judgment, State Farm and plaintiffs alleged that Arabie Trucking entered into a contract which provided for WHY to supply a truck and, driver to transport sugarcane for Lafourche using the trailer at issue. State Farm further asserted that Lafourche would have paid Arabie Trucking if WHY had delivered the sugarcane it was hauling in the trailer at the time of the accident. State Farm argued that, considering these contractual relationships and Arabie Trucking’s expectation that it would be paid if WHY completed the delivery, the undisputed facts established that the trailer was used in Arabie Trucking’s sugarcane transportation business at the time of the accident.
In its opposition, Hallmark maintained that Arabie Trucking’s business of transporting sugarcane for its clients is not sufficient under Louisiana law to find that the trailer at issue was used in connection with Arabie Trucking’s business at the time of the accident. In support, Hallmark cited Louisiana cases analyzing non-owned auto provisions wherein courts considered whether the insured was liable for the actions of the person using the auto at the time of accident through the exercise of control over the person or entity. Hallmark contended that it was undisputed that Jerold Washington was an employee of WHY, not Arabie Trucking, and that pursuant to the terms of the Owner/Operator Independent Contract of Service Agreement, WHY was an independent contractor. Hallmark argued that, based on this agreement, Arabie Trucking did not control the manner Ror means by which WHY transported the sugarcane to Lafourche. Thus, Hallmark asserted, the undisputed facts established that Arabie Trucking did not exercise any control over WHY or Mr. Washington at the time of the accident, and therefore, the trailer was not being used in connection with Arabie Trucking’s business at the time of the accident.
*1279 ■ In their reply to Hallmark’s opposition, plaintiffs argued that jurisprudence cited by Hallmark was factually, distinguishable, that Arabie Trucking was in the business of transporting sugarcane,- and that the trailer was being used in connection with Arabie Trucking’s .business to haul sugarcane for its client, Lafourche, when the accident occurred, and therefore the trailer was covered under the plain language of Hallmark’s policy. State Farm further argued that jurisprudence cited by Hallmark was distinguishable from the instant case, because, unlike other cases dealing with vicarious liability of a non-employee driver, plaintiffs had asserted claims of independent negligence against Arabie Trucking for Arabie Trucking’s maintenance of the trailer.
In granting partial summary judgment in favor of plaintiffs and State' Farm, the trial court declared that the trailer at issue is a “covered auto” as described by Hallmark’s policy. Thus, our review is limited to the trial court’s declaration that the trailer at issue is a “covered auto” under Hallmark’s policy, and the issue of Hallmark’s liability for plaintiffs claims is not subject to our review.
The interpretation of an insurance policy is usually a legal question that can be properly resolved on a motion for summary judgment. Davis v. Scottsdale Ins. Co., 13-255 (La.App. 5 Cir. 10/30/13), 128 So.3d 471, 475. An insurance policy is a contract between the parties and has the effect of law between them. Bryant v. United Services Auto. Ass’n., 03-3491 (La.9/9/04), 881 So.2d 1214, 1221. The intent of the parties, as reflected by the words of the insurance policy, determines lathe extent of coverage. Louisiana Insur. Guar. Ass’n. v. Interstate Fire and Casualty Co., 93-911 (La.1/14/94), 630 So.2d 759, 763. When courts interpret insurance policies, they must determine the parties’ common intent to ensure that the interpretation of the insurance policy is not conducted in a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by the policy’s terms. Huggins v. Gerry Lane Enterprises, Inc., 06-2816, (La.5/22/07), 957 So.2d 127, 129. If. the words of the insurance policy are clear and express the intent of the parties, the agreement must be enforced as written. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183. Any ambiguity in the terms of the policy must be construed against the drafter. and in favor of the insured. Id.
Hallmark’s policy provides that “[Hallmark] will pay all sums an ‘insured’ legally must pay as damages because of ‘bodily injury’ or ‘property damage’ to which this insurance applies, caused by an ‘accident’ arid resulting from the ownership, maintenance or use of a covered ‘auto.’”' The policy’s “Businéss Auto Coverage Form Declarations” page provides that autos covered by the policy are those described under Symbols 7 (Specifically Described Autos), 8 (Hired Autos), and 9 (Nonowned Autos) of the policy’s “Description of Covered Auto Designation Symbols” page.' Specifically Described Autos, under Symbol 7, include autos listed on the declaration page.[6] Hired Autos, under Symbol 8, include:
Only those “autos” you, lease, hire, rent or borrow. This does not include any “auto” you lease, hire, rent or borrow from any of your “employees”, partners (if you are a partnership), members (if *1280 you are a limited liability company) or members of their households.
Nonowned Autos, under Symbol 9, are defined as:-'
|inOnly those'‘autos’ you do not own, lease, hire, rent, or borrow that are used in connection with your business. This includes ‘autos’ owned by your ‘employees’, partners (if you are a partnership), members (if you are a limited liability • company), or members of their households but only while used in your business or your personal affairs.-
The parties agree that the trailer does not fall within[1] the specifically described autos designation or the hired autos provision, and thus the only relevant provision under the policy with respect to whether the trailer is a covered auto is the non-owned autos provision. The policy defines a nonowned auto as an auto the named insured “does not own, lease, hire, rent or borrow” and that is “used in connection with” the named insured’s business. The parties also agree that Arabie Trucking did. not own, lease, hire, rent or borrow the trailer. Therefore, the question before this . Court is whether the trailer was. used in connection with Arabie Trucking’s .business.
Arabie Trucking’s Answers to Interrogatories and the deposition of Arabie Trucking’s corporate representative reflect that Arabie Trucking was in the business of transporting raw sugarcane pursuant to a contract with Lafourche. The contract between Arabie Trucking and WHY reflects that Arabie Trucking hired WHY to provide trucks and drivers “in order to pursue its business of transporting raw sugar for [Arabie Trucking]’s clients,” and the contract required WHY to use sugar cane trailers assigned, inspected, and maintained by Arabie Trucking. In her deposition, Arabie Trucking’s corporate representative testified that Arabie Trucking would have been paid by Lafourche had the shipment of sugarcane been completed on the day of the accident. The record reflects that at the time of the accident, WHY’s driver, Jerold Washington, was driving WHY’s truck with an attached trailer full of sugarcane, which had been assigned by Arabie Trucking.
|, Applying the facts of this case to the plain language of Hallmark’s policy, we And no genuine issue exists as to whether the trailer was used in connection with Arabie Trucking’s business at the time of the accident. The trailer was assigned by Arabie Trucking for transpox*t by WHY in order to fulfill. Arabie Trucking’s contractual obligation to transport sugarcane to Lafourche’s sugar mill, and at the time of the accident, the trailer was being hauled pursuant to Arabie Trucking’s contract with Lafourche. At least a portion of Ara-bie Trucking’s business was transporting Lafourche’s sugarcane. Thus, under the plain language of the nonowned autos provision, the trailer was clearly “used in connection with” Arabie Trucking’s business at the time of the accident.
Hallmark contends that in order for the nonowned auto provision to apply, the policy language requires that the accident occur while the vehicle is being used in the course and scope of the named insured’s business and under the control of the named insured. See Adams v. Thomason, supra; Davis v. Scottsdale Insurance Company, supra; Gore v. State Farm Mutual Insurance Company, 26,417 (La.App. 3 Cir. 1/25/95), 649 So.2d 162, 166; Union Standard Insurance Company v. Hobbs Rental Corp., 566 F.3d 950 (10th Cir.2009); United States Fidelity & Guaranty Company v. Sanders, 5:03-0702 (S.D.W.Va.3/23/06), 2006 U.S. Dist. LEXIS 23135. However, a review of all of the cases cited by Hallmark indicates that the courts therein were analyzing whether an *1281 employee wás using the nonowned auto in the course and scope of employment or whether the insured was vicariously liable for a subcontractor or other third parties use of the nonowned auto. Neither-) the plain language of Hallmark’s policy nor Louisiana jurisprudence impose such a requirement for finding that an auto is covered by a nonowned auto provision in an insurance policy. . When the words of a contract are clear and. explicit and lead to no, absurd consequences; no further interpretation may be made ] 12in search of the parties’ intent. La. C.C. art. 2046. Therefore, we find no authority to impose the additional requirements asserted by Hallmark. ...
• Accordingly, for the reasons provided herein, we find no error in the trial court’s grant of partial summary judgment finding that this trailer is a covered' auto under the nonowned autos provision of Hallmark’s policy with Arabie Trucking, and we affirm the judgment of the trial court.

AFFIRMED

LILJEBERG, J., dissents with reasons,

. Hallmark was erroneously named as "Hall- ' mark Specialty Underwriters, Inc.” in the trial court record,

. The parties now agree that Arabie Brothers Leasing, Inc., rather than Arabie Trucking, owned the trailer.

. The policy defines nonowned autos as autos that Arabie does not own, lease, hire, rent, or borrow that are used in connection with Arabic's business.

.On appeal, neither Hallmark nor Arabie Trucking complains of the trial court’s rulings on their motions for summary judgment. Therefore, we do not address them. See Uniform Rules — Courts of Appeal, Rule 1-3.

. The summary judgment hearing in this case was held on November 2, 2015. Accordingly, we apply the version of La. C.C.P. art. 966 in effect at that time.

. The definition of an auto in the policy includes trailers or semitrailers designed for travel on public roads.

. In response to Arabie Trucking's summary judgment motions on liability, plaintiffs represented that they were not alleging a claim for vicarious liability against Arabie Trucking for Mr. Washington's and • WHY's conduct, but rather sought to recover damages against Ara-bie Trucking for its independent acts involving the maintenance of the trailer.