WICKER, J.
Plaintiff-homeowner appeals the trial court's summary judgment in favor of defendant-insurer for damages arising out of her contractor-defendant's alleged substandard work performed on her home following Hurricane Katrina. For the following reasons, we affirm the trial court's judgment.
FACTUAL AND PROCEDURAL BACKGROUND
Plaintiff, Irma Dorsey, filed suit in the 24th Judicial District Court for the Parish of Jefferson against Jon Purvis, individually, Purvis Contracting Group, LLC (hereinafter collectively "Purvis"), its insurer, Scottsdale Insurance Company, and various subcontractors, for damages arising out of work performed during the renovation of plaintiff's home following Hurricane Katrina.[1] In her petition, plaintiff alleged that her home sustained significant damages during Hurricane Katrina and that, on October 26, 2007, she contracted with Purvis to perform a complete rehabilitation and renovation of her home for the total sum of $78,643.88. Plaintiff further alleged that, after repairs began, Purvis sought an additional $35,000.00 over the contract price for the work performed.[2]
In her petition, plaintiff claimed that some of the work included in the contract was not performed as required under the contract and other work was not performed in a workmanlike manner. Specifically, plaintiff claimed that the HVAC system in her home was not repaired properly; the wooden frame of her garage doors was not replaced; her front doors were not varnished or refinished; the plumbing lines repaired have burst or *739 leaked; the exterior walls were not sufficiently insulated; one concrete stair is missing from the patio area; and the toilet and vent in her bathroom, the doorbell, and the garbage disposal have never functioned properly. Plaintiff additionally alleged in her petition that Purvis misrepresented that he was a licensed general contractor rather than a licensed home improvement contractor, which is distinguishable based upon the total repair contract price permitted. Plaintiff subsequently alleged that her home was tested at elevated levels of mold, which she claims has affected her health and caused mental distress.
On March 3, 2017, Scottsdale filed a motion for summary judgment, asserting that plaintiff's claims are excluded under the terms of the general commercial liability insurance policies issued to Purvis. Specifically, Scottsdale claimed that it issued four policies to Purvis that exclude coverage for (1) plaintiff's claims for damage to Purvis' work product or the cost to remediate Purvis' work product; (2) the cost of reimbursement for incomplete work; (3) the cost to repair faulty work when the faulty work does not cause damage to other property; (4) plaintiff's claims of mental anguish, inconvenience, or loss of income; (5) any damages caused by fraud or unfair trade practices; and (6) plaintiff's alleged damages resulting from mold.[3]
In its memorandum in support of its motion for summary judgment, Scottsdale asserted that it issued four policies to Purvis (policy numbers CLS1291796 (the 2006 policy), CLS1401402 (the 2007 policy), CLS1511135 (the 2008 policy), and CPS1048078 (the 2009 policy) ). Scottsdale attached an authenticated copy of each policy to its motion for summary judgment. Plaintiff filed an opposition to Scottsdale's motion for summary judgment. In her opposition, plaintiff acknowledged that the "only policy in question for this matter is Policy # CLS1401302, which covered Purvis from July 25, 2007 to July 25, 2008," the time period during which Purvis performed work on her home.[4]
In her opposition, plaintiff claimed that she suffered the following damages: (1) an advertising injury arising out of Purvis' advertisement as a Louisiana state licensed general contractor and not a home improvement contractor; (2) personal injury, including mold exposure, mental anguish, and distress; (3) property damage to her home involving her plumbing, electrical, and HVAC systems, as well as the installation of an insufficient amount of insulation in her home and (4) the loss of use of her home during subsequent repair as a result of Purvis' incomplete and improper work performed.
Plaintiff attached various exhibits to her opposition to Scottsdale's motion for summary judgment, which included: (1) the Home Improvement Contract between Plaintiff and Purvis; (2) Home Inspection Report; (3) Gracie Hart Electrical Inspection Report; (4) Mr. Cool repair estimate; (5) JC Services AC, LLC report; (6) Gurtler Bros. Inspection Report; (7) Winston Wood Inspection Report and Amended Report; (8) Winston Wood's curriculum vitae; (9) excerpts from Scottsdale Insurance 2007 policy; (10) Purvis Contracting Group Home Improvement Contractor License; and (11) correspondence from the Louisiana State Licensing Board of Contractors.
*740 Scottsdale filed a reply memorandum to plaintiff's opposition. In its reply memorandum, Scottsdale objected to the admissibility of all of plaintiff's exhibits attached to her opposition to Scottsdale's motion for summary judgment, contending that the attachments were not admissible summary judgment evidence as provided in La. C.C.P. art. 966(A)(4). Scottsdale asserted that plaintiff's exhibits were not authenticated by affidavit and did not otherwise fall under the exclusive list of documents and evidence admissible in a summary judgment proceeding under La. C.C.P. art. 966(A)(4).
In its reply memorandum, Scottsdale further addressed plaintiff's allegation that she sustained an "advertising injury," which Scottsdale asserted plaintiff raised for the first time in her opposition to its motion for summary judgment. Nevertheless, concerning plaintiff's claims that Purvis falsely advertised its qualifications, Scottsdale first argued that the policy provides no coverage for the alleged injuries arising from false advertisement or unfair practices. Scottsdale further pointed to its policy's "Material Published with Knowledge of Falsity" exclusion, which provides that coverage is excluded for a "personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity. Scottsdale again asserted that the policy in question provides no coverage for any of plaintiff's claims asserted.
At the April 7, 2017 hearing on Scottsdale's motion for summary judgment, counsel for Scottsdale orally re-urged its objection to the exhibits attached to plaintiff's opposition to its motion for summary judgment. The trial judge found that plaintiff's exhibits were not admissible summary judgment evidence under La. C.C.P. art. 966(A)(4) and did not consider the attachments in rendering his judgment on Scottsdale's motion. On April 17, 2017, the trial judge issued a written judgment granting Scottsdale's motion for summary judgment and dismissing all of plaintiff's claims against it with prejudice. Plaintiff timely appeals the summary judgment, contending that the trial court erred in its determination that the Scottsdale policy excludes coverage for all of plaintiff's claims.
LAW AND ANALYSIS
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Collins v. Home Depot, U.S.A. Inc. , 16-516 (La. App. 5 Cir. 3/15/17), 215 So.3d 918, 920 ; Bell v. Parry , 10-369 (La. App. 5 Cir. 11/23/10), 61 So.3d 1, 2. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). Id.
A motion for summary judgment "shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3) ; see also Chauvin v. Shell Oil Co. , 16-609 (La. App. 5 Cir. 10/25/17), 231 So.3d 903, 2017 WL 4800236, 2017 La. App. LEXIS 1923. "[I]f the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La. C.C.P. art. 966(D)(1). "The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material *741 fact or that the mover is not entitled to judgment as a matter of law." Id.
Louisiana Code of Civil Procedure art. 966 was amended and reenacted by La. Acts 2015, No. 422, § 1, with an effective date of January 1, 2016. The amended version of Article 966 governs the summary judgment proceedings in this case. La. C.C.P. art. 966(A)(4) now provides, "[t]he only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." The legislative comments to the amended version of Article 966 clarify that Subparagraph (A)(4), which is new, sets forth the exclusive list of documents that may be filed in support of or in opposition to a motion for summary judgment, and intentionally does not allow the filing of documents that are not included in the exclusive list, such as photographs, pictures, video images, or contracts, unless they are properly authenticated by an affidavit or deposition to which they are attached. Raborn v. Albea , 16-1468 (La. 1 Cir. App.5/11/17), 221 So.3d 104, 111 (quotations omitted)(citing La. C.C.P. art. 966, cmt. (c) (2015) ).
Appellate courts review a judgment granting or denying a motion for summary judgment de novo . Thus, appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Sarasino v. State , 16-408 (La. App. 5 Cir. 3/15/17), 215 So.3d 923, 927-28 ; Collins v. Home Depot, U.S.A. Inc. , supra .
Upon our review of the record, we first find that the trial court was correct in its determination that the attachments to plaintiff's opposition to Scottsdale's motion for summary judgment, which are not authenticated by affidavit or deposition as required under La. C.C.P. art. 966(A)(4), are not admissible summary judgment evidence and may not be considered in connection with the motion for summary judgment.
Concerning the determination of coverage under an insurance policy, the Louisiana Supreme Court has stated:
An insurance policy is a conventional obligation that constitutes the law between the insured and the insurer, and the agreement governs the nature of their relationship. La. C.C. art. 1983. An insurance policy is a contract, which must be construed employing the general rules of interpretation of contracts. Reynolds[ v. Select Properties, Ltd.], 634 So.2d [1180] at 1183 [ (La. 1994) ] ; La. C.C. arts. 2045 - 2057. If the insurance policy's language clearly expresses the parties' intent and does not violate a statute or public policy, the policy must be enforced as written. However, if the insurance policy is susceptible to two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted in favor of coverage. Reynolds, supra ; Newby v. Jefferson Parish Sch. Bd. , 99-0098 (La. App. 5 Cir. 6/1/99), 738 So.2d 93.
Liability insurance policies should be interpreted to effect, rather than to deny coverage. Yount v. Maisano , 627 So.2d 148, 151 (La. 1993). However, it is well-settled that unless a statute or public policy dictates otherwise, the insurers may limit liability and impose such reasonable conditions or limitations upon their insureds. Reynolds, 634 So.2d at 1183 ; Livingston Parish School Board v. Fireman's Fund American Insurance Company , 282 So.2d 478 (La. 1973) ; Oceanonics, Inc. v. Petroleum Distributing Company , 292 So.2d 190 (La. 1974).
*742 In these circumstances, unambiguous provisions limiting liability must be given effect. Jones v. MFA Mutual Insurance Company, 398 So.2d 10 (La. App. 3 Cir. 1981) ; Snell v. Stein , 261 La. 358, 259 So.2d 876 (La. 1972) ; Niles v. American Bankers Insurance Company , 258 So.2d 705 (La. App. 3 Cir. 1972). With that stated, we note that the insurer bears the burden of proving that a loss falls within a policy exclusion. Blackburn v. National Union Fire Ins. Co. , 00-2668 (La. 4/3/01), 784 So.2d 637, 641.
Supreme Servs. & Specialty Co. v. Sonny Greer, Inc. , 06-1827 (La. 5/22/07), 958 So.2d 634, 638-39.
The 2007 Scottsdale CGL policy at issue provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" if such injury or damage is caused by an "occurrence[5] " that takes place in the coverage territory and during the policy period. The policy at issue further provides coverage for damages arising out of a "personal and advertising injury" as defined in the policy.
The policy contains exclusions, however, which Scottsdale contends exclude coverage for all of plaintiff's claims in this case. In support of its motion for summary judgment as to the policy at issue, Scottsdale relied on the following exclusions:
(1) The Property Damage Exclusion
(2) The property damage exclusion, in pertinent part, excludes coverage for "property damage[6] " to:
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
Paragraph (6) of this exclusion does not does not apply to "property damage" included in the "products-completed operations hazard."
(2) The Work Product Exclusion
The work product exclusion excludes from coverage:
"property damage" to "your product[7] " arising out of it or any part of it.
(3) The Damage to Your Work Exclusion
The "damage to your work" exclusion excludes from coverage:
"property damage" to "your work[8] " arising out of it or any part of it and *743 included in the "products-completed operations hazard."[9]
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.
(4) The Fungi or Bacteria Exclusion
The fungi or bacteria exclusion excludes from coverage:
"Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria within a building or structure....
(5) Personal and Advertising Injury Exclusion
The personal and advertising injury exclusion excludes:
"bodily injury" arising out of "personal and advertising injury."
(6) Material Published With Knowledge of Falsity
This exclusion excludes from coverage:
"Personal and Advertising Injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.
Louisiana jurisprudence has consistently recognized that commercial general liability policies are not performance bonds and are not intended as a guarantee of the quality of the insured's products and work. W.S. McKenzie & H.A. Johnson, III, Insurance Law and Practice, La. Civil Law Treatise, Vol. 15, Section 198 (2nd ed. 1996); Vintage Contr., L.L.C. v. Dixie Bldg. Material Co. , 03-422 (La. App. 5 Cir. 9/16/03), 858 So.2d 22, 28 (quotations omitted); Breaux v. St. Paul Fire & Marine Ins. Co. , 345 So.2d 204, 208 (La. App. 3rd Cir. 1977) ; Korossy v. Sunrise Homes, Inc. , 94-473 (La. App. 5 Cir. 3/15/95), 653 So.2d 1215, writ denied , 95-1536 (La. 9/29/95), 660 So.2d 878. Work-product exclusions similar to the one contained in Scottsdale's policy have been uniformly upheld in Louisiana. See, Vintage Contr., L.L.C., supra ; Joe Banks Drywall & Acoustics, Inc. v. Transcontinental Ins. Co. , 32,743 (La. App.2 Cir. 3/1/00), 753 So.2d 980 ; Western World Ins. Co. v. Paradise Pools & Spas , 93-723 (La. App. 5 Cir. 2/23/94), 633 So.2d 790 ;
*744 Rivnor Properties v. Herbert O'Donnell, Inc. , 92-1103 (La. App. 5 Cir. 1/12/94), 633 So.2d 735, writ denied , 94-1293 (La. 9/2/94), 643 So.2d 147 ; Hallar Enterprises, Inc. v. Hartman , 583 So.2d 883 (La. App. 1st Cir. 1991), Castigliola v. Department of Community Development , 538 So.2d 1139 (La. App. 5th Cir. 1989). Louisiana courts have consistently found that a commercial general liability policy, such as the Scottsdale policy at issue in this case, excludes damages to repair and replace the insured's defective products or faulty workmanship.
The Louisiana Supreme Court-in considering a policy's exclusions identical in language to the Scottsdale policy at issue in this case and in addressing a split in the circuit courts of appeal concerning similar policy exclusions-found that the work product exclusion "reflects the insurance company's intent to 'avoid the possibility that coverage under a CGL policy will be used to repair and replace the insured's defective products and faulty workmanship.' A CGL policy is not written to guarantee the quality of the insured's work or product." Supreme Servs. & Specialty Co. v. Sonny Greer, Inc. , 06-1827 (La. 5/22/07), 958 So.2d 634, 641 (citing McMath Const. Co., Inc. v. Dupuy , 03-1413 (La. App. 1st Cir. 11/17/04), 897 So.2d 677, 682, writ denied , 04-3085 (La. 2/18/05), 896 So.2d 40 ). The Supreme Court went on to state that the work product exclusion in a general commercial liability policy identical to the Scottsdale policy at issue "applies to both the contractor as well as others acting on his behalf-subcontractors" and "does not insure any obligation of the policyholder to repair or replace his own defective product." Supreme Servs. & Specialty Co. , 958 So.2d at 641, 645.
A review of the policy at issue in this case reflects that the damages plaintiff alleges directly resulted from the work Purvis performed and are specifically excluded under the policy. Plaintiff claims that the work performed- rehabilitating and renovating her entire residence, which was gutted to the wall studs, following Hurricane Katrina-was not completed properly or in a workman like manner. The physical property damage plaintiff alleges is related to Purvis' work performed to her home pursuant to the contract. Thus, plaintiff's property damage claims are specifically excluded from coverage under the work product and damage to your work exclusions. As stated above, Louisiana jurisprudence has consistently held that a GCL policy does not serve as a performance bond and does not cover damages to the property on which the contractor worked and arising out of faulty or substandard work. Supreme Servs. & Specialty Co., supra .
Moreover, we find that the policy at issue does not provide coverage for plaintiff's remaining claims. As to plaintiff's claim for damages arising out of mold exposure, those claims are specifically excluded under the policy's "Fungi or Bacteria Exclusion." Further, although the policy does provide coverage for a "personal and advertising injury," plaintiff's fraud claims and unfair practice claims related to Purvis' alleged false advertisement as a licensed general contractor do not fall within the policy's provisions for coverage.
Scottsdale's policy at issue provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies." The policy specifically defines "personal and advertising injury" as follows:
(14) "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
*745 a. False arrest, detention or imprisonment;
b. Malicious prosecution;
c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
f. The use of another's advertising idea in your "advertisement"; or
g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".
Plaintiff's claims related to Purvis' alleged fraud, false advertising, and misrepresentation as a general contractor do not arise out of any of the enumerated offenses set forth in the policy's "personal and advertising" coverage provision. Therefore, we find that coverage for plaintiff's remaining claims, arising out of Purvis' alleged false and misleading advertisement as a Louisiana state licensed general contractor, do not fall within the policy's definition of "personal and advertising injury" and thus are not covered under the terms of the policy at issue.[10]
CONCLUSION
For the reasons provided herein, we find that the Scottsdale policies issued to defendant Purvis do not provide coverage for plaintiff's claims under the facts of this case and, thus, the trial judge was correct in granting Scottsdale's motion for summary judgment. Accordingly, we affirm the trial court's judgment.
AFFIRMED

Plaintiff initially filed a "Petition for Damages, For Breach of Contract, and for Fraud" on November 12, 2008, in the 24th Judicial District Court, against Jon Purvis individually and Purvis Contracting Group, LLC. On July 31, 2012, Plaintiff filed a "Petition for Damages" in Civil District Court for the Parish of Orleans against Scottsdale Insurance Company, Purvis Contracting Group, LLC, and various subcontractors, including JBC Services, LLC, Ramm Plumbing, LLC, Gulf States and Edd's A.C. & Heating, LLC. That suit was subsequently transferred to the 24th Judicial District Court for the Parish of Jefferson and was consolidated with the petition filed on November 12, 2008, against Jon Purvis individually and Purvis Contracting Group, LLC.

Plaintiff further alleged that Purvis fraudulently entered into the contract at issue for $76,643.88, and that Purvis knew at the time the contract was signed that the work could not be performed for the contract price.

Scottsdale also asserted, as to the 2006, 2008, and 2009 policies, that the policies excluded physical damage to tangible property that did not occur during the policy period.

Considering this stipulation by plaintiff, our analysis will consider only the July 25, 2007-July 25, 2008 Scottsdale policy at issue.

An "occurrence" is defined in the policy as "an accident, which includes continuous or repeated exposure to substantially the same general harmful conditions."

Property damage is defined in the policy as: "(a) physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Your Product" means:
(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
(a) You;
(b) Others trading under your name; or
(c) A person or organization whose business or assets you have acquired; and
(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

The policy provides that "your work:"
(a) Means:
(1) Work or operations performed by you or on your behalf; and
(2) Materials, parts or equipment furnished in connection with such work or operations.
(b) Includes:
(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and
(2) The providing of or failure to provide warnings or instructions.

The policy defines "products-completed operations hazard Products-completed operations hazard" to include:
a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
(1) Products that are still in your physical possession;
or
(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
(a) When all of the work called for in your contract has been completed.
(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project. Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

In brief to this Court, plaintiff further alleges that the trial court erred in granting summary judgment because "Scottsdale was not being forthright in its production of materials and answers during discovery; which Dorsey STRONGLY believes proves deceit on the part of the insurer...." (Emphasis original). This assignment of error was not briefed and is, thus, abandoned on appeal. See Louisiana Uniform Rules of Courts-Court of Appeal, Rule 2-12.4(B).