J. CALDARERA & COMPANY, INC.

VERSUS

TRIUMPH CONSTRUCTION, L.L.C.

NO. 21-CA-75

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 70,409, DIVISION "B"
HONORABLE KIRK A. VAUGHN, JUDGE PRO TEMPORE AND
HONORABLE NGHANA LEWIS, JUDGE PRESIDING

September 22, 2021

**ROBERT A. CHAISSON**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Robert A. Chaisson, and John J. Lee, Jr.

**AFFIRMED**
 **RAC**
 **MEJ**
 **JJL**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
J. CALDARERA & COMPANY, INC.
John W. Waters, Jr.

COUNSEL FOR DEFENDANT/APPELLEE,
ATAIN SPECIALTY INSURANCE COMPANY
Matthew D. Monson
Kevin P. Riche'

**CHAISSON, J.**

J. Caldarera & Company, Inc. ("Caldarera") appeals a judgment of the trial court granting a Motion for Summary Judgment filed by Atain Specialty Insurance Company ("Atain") that denied insurance coverage under a commercial general liability (CGL) policy issued to Triumph Construction, L.L.C. ("Triumph"), for claims made by Caldarera against Triumph arising from alleged acts and omissions during the construction of Fontainebleau Junior High School. For the following reasons, we affirm the judgment of the trial court.

**BACKGROUND**

Caldarera entered into a General Contract with the St. Tammany Parish School Board to furnish all labor and materials and perform all work required for the construction of Fontainebleau Junior High School. On May 4, 2015, Caldarera and Triumph entered into a Subcontract Agreement for the performance of certain parts of the work for the project, including the furnishing of labor and other services necessary for the construction and installation of concrete foundation and site pavement work.

A concrete pour was scheduled for Saturday, April 30, 2016, in advance of on-coming inclement weather. In anticipation of the pour, Caldarera dug and formed below grade trenches, arranged for delivery of concrete, and made other preparations. Triumph's workers failed to appear for the scheduled concrete pour. Rain subsequently destroyed the pre-dug trenches and cave-ins of earthen excavations. Triumph did not return to the construction project.

On March 8, 2017, Caldarera filed an initial Petition for Damages wherein it alleged that Triumph breached the Subcontract Agreement for various acts and omissions constituting both breach of contract and negligence, including failing to show up for the concrete pour. Caldarera claimed damages as a direct result of Triumph's breaches and negligence including cost of overhead, cost of project

completion, cost to redo work and repair other parts of the project damaged by Triumph, cost of acceleration, and other damages to be shown at trial.

Following failed mediation by a professional construction mediator as required by the terms of the Subcontract Agreement, Caldarera, on November 29, 2017, filed an Amended and Restated Petition for Damages naming as defendant Atain, Triumph's insurer, and stated the following acts and omissions by Triumph allegedly constituting both breach of contract and negligence:

a. Failing to familiarize itself and its personnel with the requirements of the Project's plans and specifications.
b. Subcontracting its work to another contractor without discussing or notifying CALDARERA; a requirement of the Triumph subcontract.
c. Subcontracting its work to an incompetent sub-subcontractor.
d. Failing to notify CALDARERA it was using subcontractors to execute its work.
e. Failing to man the Project with the quantity of skilled craftsman [sic] needed to keep pace with the Project …
f. Abandoning the Project.
g. Abandoning the Project without providing CALDARERA with reasonable and adequate notice.
h. Failing to appear for a scheduled concrete pour.
i. Failing to notify CALDARERA in advance that Triumph would not have a crew at the scheduled concrete pour.
j. Failing to cure defects in its performance despite notice on at least two separate occasions.
k. Refusing to return to the Project to complete its work.
l. Failing to protect adjacent work.
m. Failing to give consideration and respect for the work of other trades.
n. Failing to coordinate installation of its work with the other trades.
o. Failing to protect its work from adverse weather.
p. All other breaches or negligence which may be shown at trial.

Caldarera also reiterated its claims for damages including the cost to repair and replace damaged property, increased overhead, cost of completion, cost to accelerate work, and loss of use of property.

On August 21, 2019, Atain filed a Motion for Summary Judgment Due to Lack of Insurance Coverage seeking a ruling from the trial court that Atain has no

contractual obligation to defend or indemnify Triumph against Caldarera's claims for damages stemming from the construction project. In support of this motion, Atain argued that Caldarera's claims do not trigger coverage under the Atain CGL policy because a breach of contract is not an "accident" as that term is used in the definition of "occurrence" in the insurance policy. Atain additionally argued that even if the claims were to constitute an "accident" for purposes of the policy, they would still not be covered because of various policy exclusions including the Damage To Impaired Property or Property Not Physically Injured Exclusion, the Subsidence Exclusion, the Work Product Exclusions, and the Contractual Liability Exclusion. In support of its motion, Atain included both copies of the petition for damages and the CGL policy issued to Triumph.

The trial court heard oral arguments on the motion, after which the matter was taken under advisement. On February 4, 2020, the trial court issued a judgment granting Atain's motion. In subsequent written reasons for judgment, the court stated that it agreed with Atain's position that its policy did not provide coverage for "breach of contract" claims arising from Triumph's failure to perform work in accordance with its contractual obligations and that the damages were not cause by an "occurrence" as defined by the policy. The judgment was then designated as final pursuant to La. C.C.P. art. 1915(A). Caldarera's timely appeal followed.

On appeal, Caldarera argues that the trial court legally erred in granting Atain's Motion for Summary Judgment because Caldarera's claims do constitute an "occurrence" within the meaning of Atain's policy and because the policy exclusions are inapplicable. We consider these arguments in our discussion below.

**DISCUSSION**

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant.

La. C.C.P. art. 966; *Reynolds v. Bordelon*, 14-2371 (La. 6/30/15), 172 So.3d 607, 610.  A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Id.* at 610.  Interpretation of an insurance policy is usually a legal question that can be properly resolved by means of a motion for summary judgment.  *Sanchez v. Sigur*, 18-680 (La. App. 5 Cir. 1/16/19), 264 So.3d 587, 590.  A summary judgment may be rendered on the issue of insurance coverage alone, although there is a genuine issue as to liability or damages.  *Henly v. Phillips Abita Lumber Co.*, 06-1856 (La. App. 1 Cir. 10/3/07), 971 So.2d 1104, 1108.

We note from the beginning that genuine disputes of fact remain between Triumph and Caldarera concerning the events surrounding the construction project which are material to the underlying claims between them.  While Triumph opposed Atain's Motion for Summary Judgment at the trial court, it has not joined in this appeal.  Neither Atain nor Caldarera argue on appeal that genuine issues of material fact preclude the granting of summary judgment.  The scope of our review then is limited to the legal question of whether the CGL policy provides coverage for Caldarera's claims, and for the purposes of this review we accept as true the well-pleaded allegations of fact set forth in Caldarera's Amended and Restated Petition for Damages. *See*, La. C.C.P. art. 966.

An insurance policy is a contract which must be construed by employing the general rules for the interpretation of contracts.  *Dorsey v. Purvis Contracting Grp., LLC*, 17-369 (La. App. 5 Cir. 12/27/17), 236 So.3d 737, 741, *writ denied*, 18-0199 (La. 3/23/18), 239 So.3d 296.  The intent of the parties, as reflected by the words of the insurance policy, determines the extent of coverage.  *Brazan v. Washington*, 16-61 (La. App. 5 Cir. 6/14/16), 194 So.3d 1274, 1279.  An insurance

policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1183 (La. 1994). If the policy's language clearly expresses the parties' intent and does not violate a statute or public policy, the policy must be enforced as written. *Dorsey*, *supra*.

Atain issued Policy CIP276177 to Triumph, effective from January 14, 2016, to January 14, 2017. The insuring agreement for this policy states in pertinent part the following:

> 1. Insuring Agreement
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>    ***
>    b. This insurance applies to "bodily injury" and "property damage" only if:
>    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"
>    (2) The "bodily injury" or "property damage" occurs during the policy period; …

The definitions section of the Atain policy defines "occurrence" and "property damage" as follows:

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
> ***
> 17. "Property Damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Pursuant to the language of the policy, in order to trigger coverage, the underlying claims must constitute "property damage" caused by an "occurrence."

Caldarera argues on appeal that the trial court erred in not finding that coverage was trigged under the facts alleged in its petition for damages. Caldarera claims that, pursuant to a number of construction cases concerning defective workmanship, the damage sustained by Caldarera is an "occurrence" under a CGL policy like Atain's. We find this argument to be without merit, as shown by a review of the language of the policy and the claims set forth in Caldarera's petition.

As stated above, the language of the policy states two distinct definitions for "property damage" and "occurrence". To conflate them as the same, as Caldarera proposes, would radically alter the meaning of the insuring agreement such that it would require the insurer to pay for all property damage regardless of whether it was caused by an accident. Such an interpretation would change the meaning of the insurance agreement from one designed to manage the risks of unforeseeable accidents to one guaranteeing the quality of the subcontractor's work, or, in other words, a performance bond. We find such an interpretation unreasonably enlarges the scope of the policy's provisions beyond what is contemplated by its terms. As the Louisiana Supreme Court has stated, a CGL policy is not written to guarantee the quality of the insured's work or product. *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827 (La. 5/22/07), 958 So.2d 634, 641.[1]

Caldarera's argument is undermined as well by a review of the amended petition, which shows no factual allegations relating to defective workmanship by Triumph. Rather, the stated factual claims assert that Triumph did no work at all,

---

[1] Section 12 of the Subcontract Agreement states that the contractor, Caldarera, has the option to require the subcontractor, Triumph, to furnish a payment or performance bond. There is no evidence indicating this option was exercised.

that it failed to show up to the concrete pour, that it failed to notify Caldarera, that it failed to protect its work from adverse weather - in other words, that it failed to fulfill its contractual obligations set forth in the Subcontract Agreement. We do not find that any of these acts and omissions alleged by Caldarera amount to an "accident" for the purposes of triggering coverage under the CGL policy. Accordingly, we find that the CGL policy does not provide coverage for Caldarera's claims against Triumph.

Having found no coverage under the policy, we pretermit any further discussion concerning the applicability of the policy exclusions further relied upon by Atain to deny coverage.

**CONCLUSION**

Upon our *de novo* review, we find that the CGL insurance policy issued by Atain to Triumph does not provide coverage for the claims asserted by Caldarera against Triumph in its Amended and Restated Petition for Damages. Atain is therefore entitled to summary judgment as a matter of law.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**SEPTEMBER 22, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL
PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

## 21-CA-75

**E-NOTIFIED**
40TH DISTRICT COURT (CLERK)
HONORABLE KIRK A. VAUGHN, JUDGE PRO TEMPORE (DISTRICT JUDGE)
HONORABLE NGHANA LEWIS (DISTRICT JUDGE)
JOHN W. WATERS, JR. (APPELLANT)          KEVIN P. RICHE' (APPELLEE)

**MAILED**
MATTHEW D. MONSON (APPELLEE)          GREGORY S. WEBB (APPELLEE)
ATTORNEY AT LAW                        ATTORNEY AT LAW
900 WEST CAUSEWAY APPROACH             POST OFFICE BOX 1738
SUITE A                                PRAIRIEVILLE, LA 70769
MANDEVILLE, LA 70471